**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-00693

VINCENT SCOTT, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ANTERO RESOURCES CORP.,

Defendant.

---

**DEFENDANT ANTERO RESOURCES CORPORATION'S OPPOSITION
TO PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND
TESTIMONY OF THOMAS H. MILSTEAD**

---

Plaintiffs' motion to exclude the report and testimony of Antero's expert Thomas H. Milstead should be denied primarily because it is based on the faulty premise that Mr. Milstead will opine as to the "economic realities factors" used by courts in interpreting the Fair Labor Standards Act.  Yet Antero did not proffer Mr. Milstead as such an expert, and the testimony he will provide does not reach that subject matter.  Rather, as requested, Mr. Milstead opined, based on his more than 40 years of oil and gas industry experience, as to industry standards regarding the work of drilling consultants.  Thus, Mr. Milstead's report and testimony are consistent with both Fed. R. Evid. 702 and the requirements of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and accordingly, this Court should deny Plaintiffs' motion.

## BACKGROUND

It is undisputed that Mr. Milstead has over 40 years of experience in the oil and gas drilling and completion industry, including several decades of work as a drilling consultant engaged and compensated as an independent contractor.  MILSTEAD000005, Pl. Mot. Ex. A at 2.  In his

capacity as a drilling consultant, Mr. Milstead provided services to more than 40 oil and gas operators. *See, e.g.*, MILSTEAD000013, Pl. Mot. Ex. A at 10.

Because of his extensive experience in and knowledge of the industry and the work of drilling consultants, Antero engaged Mr. Milstead to render an expert opinion as to:

> the industry standard regarding the scope of duties of drilling consultants, the level of expertise to perform drilling consultant work within the industry, operator control over drilling consultants, industry expectations for drilling consultant decision-making, direct of rig crew, opportunity for profit in the industry, the scope of engagements, and how Antero's operations compared to those industry standards.

MILSTEAD000005, Pl. Mot. Ex. A at 2.

In formulating his expert opinion, Mr. Milstead reviewed more than one thousand pages of documents produced in this litigation, including the complaint, Plaintiff Scott's Master Consulting Services Agreement, Antero's safety guidelines, West Virginia oil and gas regulations, and numerous drilling reports and drilling prognoses. *Id.* Mr. Milstead also visited an Antero well site to observe drilling consultants at work during both the day and night shifts, and he interviewed several drilling consultants working with Antero and at least one member of Antero's management team. *Id.* Mr. Milstead relied on this information gathered during his investigations and interviews, along with his decades of relevant experience, in formulating his expert opinions. In sum, Mr. Milstead opined that drilling consultants require a substantial amount of experience and expertise to perform their jobs, and that the drilling consultants who provided services to Antero acted within the general scope of industry standards. MILSTEAD000006, Pl. Mot. Ex. A at 3. Mr. Milstead did not opine at any point as to the legal standards this Court may apply in evaluating Plaintiffs' claims, nor did he provide scientific testimony subject to the factors outlined by the U.S. Supreme Court in *Daubert*.

## **LEGAL STANDARD**

"A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the

exception rather than the rule."  Fed. R. Evid. 702 cmt 2000.  An individual is qualified to provide

an expert opinion if he has the requisite "knowledge, skill, experience, training, or education."  *See*

Fed. R. Evid. 702.  As Plaintiffs acknowledged, in determining whether an expert's opinion is

admissible, courts consider "whether the expert is proposing to testify to (1) scientific knowledge

that (2) will assist the trier of fact to understand or determine a fact in issue."  Mot. 2, quoting

*Daubert*, 509 U.S. at 592-93.

Plaintiffs mistakenly ask this Court to apply the traditional *Daubert* factors to Mr.

Milstead's non-scientific opinion: whether: (1) the opinion at issue is susceptible to testing and has

been subjected to such testing; (2) the opinion has been subjected to peer review; (3) there is a

known or potential rate of error associated with the methodology used . . . ; and (4) the theory has

been accepted in the scientific community.  *Daubert*, 509 U.S. at 592-94.  But as Plaintiffs are well

aware, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (2000), the U.S. Supreme Court

recognized that these factors were better suited for *scientific* experts:

> We can neither rule out, nor rule in, for all cases and for all time the
> applicability of the factors mentioned in *Daubert,* nor can we now
> do so for subsets of cases categorized by category of expert or by
> kind of evidence. Too much depends upon the particular
> circumstances      of      the      particular      case      at      issue.

*Id.* at 150.  In fact, the court "need not evaluate reliability based solely on the four *Daubert* factors;

it may evaluate reliability based on the expert's 'knowledge and experience [in] his discipline.'"

*John McClelland & Ass's., Inc. v. Medical Action Indus., Inc*., No. 04–2545–CM, 2006 WL

3333061, at *3 (D. Kan. Nov. 15, 2006) (internal citations omitted).   Accordingly,

the *Daubert* factors are not a "definitive checklist or test," and a trial court's inquiry into the

reliability of evidence under Rule 702 is "a flexible one." *Hynes v. Energy W., Inc.*, 211 F.3d 1193, 1205 (10th Cir. 2000) (citing *Daubert,* 509 U.S. at 593, 594).   Under the proper lens, Mr. Milstead's expert report and testimony must stand.

Because Mr. Milstead is not providing a scientific opinion, this Court need not rigorously apply the Daubert factors in evaluating his proposed report and testimony.   Rather, it should determine whether Mr. Milstead's opinion is reliable and useful in evaluating whether Plaintiffs' work as drilling consultants was consistent with industry standards.   Mr. Milstead's decades of experience as a drilling consultant in the oil industry, his investigations into Plaintiffs' work, and his interviews with Plaintiffs' peers render him a qualified individual who will provide reliable testimony that will aid this Court in this litigation, satisfying the standard under the Federal Rules and controlling law.

## ARGUMENT

### I.     MR. MILSTEAD IS A QUALIFIED EXPERT ON THE INDUSTRY STANDARDS FOR DRILLING CONSULTING

Mr. Milstead's education and years of experience as a drilling consultant qualify him to opine as an expert in this case.   To qualify as an expert, Mr. Milstead must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."   *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (citing *Graham v. Wyeth Labs.,* 906 F.2d 1399, 1408 (10th Cir.1990).   In other words, "[t]he heart of expert testimony is the *foundation.*"   *Id.*   Accordingly, "[w]hether an expert is qualified is determined by comparing her credentials, experience, etc. with what she is going to testify to . . . ."   *See, e.g., Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013) (upholding exclusion of testimony from an individual with

4

a Ph.D. in business who had worked for 25 years in human resource management and organizational behavior from testifying as an expert in sex stereotyping case).

Plaintiffs seek to undermine Mr. Milstead's credentials by misconstruing him as a purported expert on the FLSA and its economic realities test, asserting that "Milstead is no expert. He is a *drilling consultant* who . . . has no experience, education, training, or expertise *concerning the . . . . (FLSA) . . . .*" Pls.' Mot. at 1 (emphasis added). Plaintiffs are right as to one point--Mr. Milstead *is* a drilling consultant--but he was not retained as a legal expert, nor will he be proffered as one. Instead, Mr. Milstead's resume reflects a Bachelor of Science in Petroleum Engineering, additional industry-specific education on drilling and mud properties, the provision of drilling consulting services to dozens of companies, and over 40 years of experience in the oil and gas industry -- which is precisely why Antero engaged him to render "an expert opinion as to the industry standard regarding the scope of duties of drilling consultants." MILSTEAD000005. Plaintiffs miss the point when they argue that Mr. Milstead has "absolutely no experience with the FLSA or the economic realities test." Mot. 3-4  Neither Federal Rule of Evidence 702 nor any of the cases interpreting it requires an industry and customs expert to have expert knowledge on the actual law that applies to the litigation when he has not been disclosed as a legal expert.

Plaintiffs' other arguments as to Mr. Milstead's lack of qualifications similarly fail. They assert that Mr. Milstead has never before provided expert testimony as to the duties of drilling consultants. Mot. 3. But the frequency with which an expert has testified is not determinative of his qualifications to do so. *See United States v. Parra*, 402 F.3d 752, 758–59 (7th Cir. 2005) (in affirming the district court's admission of detective's expert testimony on the *modus operandi* of drug dealers, the court noted that "[o]n appeal, Arturo [Parra] counters [the district court's] reasoning only with the fact that Agent Becka had never previously testified as an expert on these

matters.  But there is a first time in court for every expert: the question is not whether . . . Agent Becka was a professional witness; it is whether he was an expert on the topic of the *modus operandi* of narcotics dealers.").  The mere fact that Mr. Milstead has not previously testified on industry standards makes him no less of an expert.

Plaintiffs also assert that Mr. Milstead "never worked for Antero in any capacity, nor has he worked in Ohio, West Virginia, or Pennsylvania, where Plaintiffs worked for Antero."  Mot. at 3.  The fact that Mr. Milstead is not a former Antero employee or contractor is of no relevance -- he presents his testimony as an expert, not as a fact witness.  And nothing about this case turns on the geography of the rigs where Plaintiffs provided services to Antero.

Further, as Plaintiffs are well aware, Mr. Milstead need not have personal knowledge of these types of facts, as Antero engaged him to opine on industry standards.  An expert need not opine on the particular facts of a case if he is educating the trier of fact on specialized concepts. *See, e.g., United States v. Brinson*, 772 F.3d 1314 (10th Cir. 2014) (permitting detective to testify on specialized terminology regarding sex trafficking despite having no knowledge of specific facts of the case at hand); *see also*  Fed. R. Evid. 702, 2000 advisory cmt notes ("it might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case").  Mr. Milstead's report and testimony apply his decades of experience as a drilling consultant to his investigation into Antero's operations--including a personal site visit.  He needs no former association with Antero or work experience in Ohio or West Virginia to do so.

US 165910483v2

## II.    MR. MILSTEAD'S TESTIMONY WILL ASSIST THE TRIER OF FACT IN UNDERSTANDING THE HIGHLY-SPECIALIZED INDUSTRY OF DRILLING CONSULTING

Plaintiffs allege that Mr. Milstead's testimony will not be useful to this Court because it does not meet the *Daubert* factors outlined above.  But (as discussed above) Plaintiffs ignore that this Court need not apply those factors when evaluating the opinion of a non-scientific expert.  Rather, this Court should evaluate whether Mr. Milstead's testimony will assist it in considering industry standards with respect to the work of drilling consultants.

Mr. Milstead's testimony will aid the Court here as similar testimony has aided courts across the country under analogous circumstances.  For example, in *Curry v. Ensco Offshore Company*, a derrick hand sued a rig operator for injuries he sustained while working on a drilling rig.  54 Fed. App'x. 407 (5th Cir. 2002).  The plaintiff in *Curry* relied on a marine safety expert who opined that the manner in which the operator required the plaintiff to work was unsafe.  *Id.* at *2.  The Fifth Circuit upheld the district court's admission of the expert's testimony, finding that the expert's "experience as the safety director for the Mayronne drilling company and as an drilling industry safety consultant is generally relevant to this case about an injury on a drilling rig.  Because he worked with top rigs and riding belts . . . his experience also has particular relevance."  *Id.* at *4.  Therefore, "[t]he reliability of his opinion that using a maul while in a riding belt is an unsafe practice is demonstrated by the fact that [it is] based . . . on industry custom and practice."  *Id.  See  also Parker v. Diamond Offshore Co*., No. Civ.A. 04-3306, 2006 WL 861185 (E.D. La. Mar. 23, 2006) (admitting testimony of safety expert with over 40 years of experience as a drilling safety manager and drilling safety consultant because his opinions would be helpful to the trier of fact, as "it [was] unlikely that a juror's common experience and knowledge would encompass the

US 165910483v2

proper use of tongs and counterweights on a drilling rig"); *Peters v. Diamond Offshore Co.*, No. CIV.A. 05-2507, 2006 WL 2583305, at *2 (E.D. La. Sept. 1, 2006) (same).

Mr. Milstead's expert opinion is similar in nature to the opinions admitted in these oil and gas industry cases.  "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 cmt 2000.  Mr. Milstead, like the experts in *Curry*, *Parker*, and *Peters*, applied his decades of specialized experience in the oil and gas industry, to the facts underlying this case.  His opinions will assist this Court in evaluating industry standards regarding the work of drilling contractors and whether Plaintiffs' job duties and responsibilities were within those general parameters.

Plaintiffs further argue that Mr. Milstead's testimony will not be useful because he allegedly performed his investigation "without using any accepted methodology, plan, standards, criteria, or other guiding principles."  Mot. 6.  But once again, Plaintiffs' argument is without merit, as such standards apply only to scientific experts, not industry and custom experts such as Mr. Milstead.  Fed. R. Evid. 702 cmt 2000; *Kumho Tire*, 526 U.S. at 150; *John McClelland & Associates, Inc. v. Medical Action Industries, Inc.*, No. 04–2545–CM 2006 WL 3333061 at *3 (D. Kan. Nov. 15, 2006); *Tassin v. Sears Roebuck*, 946 F. Supp. 1241, 1248 (M.D. La. 1996).  Mr. Milstead's alleged lack of "methodology" is not a basis for striking his report or testimony, particularly in light of the fact that his opinions will provide the Court with useful information in weighing Plaintiffs' claims and Antero's defenses.

## CONCLUSION

8

Based on the foregoing, the Court should deny Plaintiffs' Motion to strike the report and testimony of Mr. Milstead.

Respectfully submitted,

*/s/ Ed P. Aro*

ED P. ARO
ARNOLD & PORTER KAYE SCHOLER LLP
370 17th Street, Suite 4400
Denver, Colorado 80203
Telephone: 303.863.2380
Facsimile:  303.832.0428
Email: ed.aro@arnoldporter.com

Joshua F. Alloy
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001
Telephone:  (202) 942-5895
Facsimile:   (202) 942-5999
Email: josh.alloy@arnoldporter.com
*Application for Admission Submitted*

*Attorneys for Defendant Antero Resources Corporation*

9

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2019, a true and correct copy of the foregoing document was served on counsel for Plaintiff via e-mail, addressed as follows:

Michael A. Josephson
Lindsay R. Itkin
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
*mjosephson@mybackwages.com*
*litkin@mybackwages.com*

Matthew S. Parmet
BRUCKNER BURCH, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
*mparmet@brucknerburch.com*

*Attorneys for Plaintiff*

/s/ Ed P. Aro
Attorney for Defendant

10