**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0693-WJM-SKC

VINCENT SCOTT, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

ANTERO RESOURCES CORP.,

    Defendant.

## ORDER DENYING PLAINTIFF'S RULE 702 MOTION

Plaintiff Vincent Scott ("Scott") brings this action against Defendant Antero Resources Corp. ("Antero") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (ECF No. 1.) Scott claims that he and others similarly situated were misclassified as independent contractors and therefore unlawfully denied overtime wages.

Currently before the Court is Scott's Motion to Exclude the Report and Testimony of Thomas H. Milstead. (ECF No. 116.) For the reasons explained below, this motion is denied.

## I. BACKGROUND

Antero is Colorado corporation in the business of oil and natural gas exploration and production. (ECF No. 1 ¶¶ 9, 16.) Scott alleges that he "worked exclusively for Antero from approximately May 2013 until [February] 2015 as a Drilling Consultant.[1]

---

[1] Scott's complaint says that he stopped working for Antero in January 2015, but his

Throughout his employment with Antero, he was classified as an independent contractor and paid on a day-rate basis." (*Id.* ¶ 18.)  In other words, he received "a flat sum for each day worked, regardless of the number of hours [he] worked that day (or in that workweek)." (*Id.* ¶ 17.)  Scott further asserts that he and the other Drilling Consultants possessed all the characteristics of non-exempt employees rather than independent contractors or exempt employees.  (*Id.* ¶¶ 19–52.)

Ultimately, whether Scott or any other Drilling Consultant was an Antero "employee" for FLSA purposes turns on the multi-factor "economic reality" test.  *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998); *Doty v. Elias*, 733 F.2d 720, 722–23 (10th Cir. 1984).

> In applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Baker*, 137 F.3d at 1440.

Apparently with these factors in mind, Antero retained Thomas Milstead, a petroleum engineer with "over 43 years of drilling and completion experience, including decades of experience performing services as an independent contractor drilling consultant" (ECF No. 116-1 at 2)[2] to opine on the following:

- "What is the general scope of duties of a drilling consultant, within the

---

declaration in support of FLSA conditional certification says February 2015.  (*See* ECF No. 23-2 ¶ 2.)  For present purposes, the Court will treat the latter date as the most accurate.

[2] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination, particularly in exhibits.

2

industry at large, and with respect to Antero specifically? Do those duties commonly involve the performance of manual labor?" (*Id.* at 3.)

- "What level of expertise/experience is generally expected/needed to perform as a drilling consultant? How is that experience/expertise applied, if at all, in practice, within the industry, and with respect to Antero specifically?" (*Id.* at 4.)

- "Is the drilling consultant role subject to Antero's control? If so, to what level of direction or control? How does that compare to industry practice[?]" (*Id.* at 5.)

- "Do the drilling consultant's duties involve the exercise of decision making, independent judgment, and discretion? If so, how?" (*Id.* at 7.)

- "Does any aspect of the drilling consultant's scope of work involve management or direction of others? If so, how so?" (*Id.* at 8.)

- "Do drilling consultants have (or not have) the opportunity to influence their profits and losses?" (*Id.*)

- "Do contractors or Antero supply (or receive) the tools/instrumentalities for performing the position?" (*Id.* at 9.)

- "Do contractors perform services on a project-by-project basis or otherwise?" (*Id.*)

To answer these questions, Milstead states in his report that he

> reviewed the Complaint filed in this action, the Master Consulting Services Agreement for Vincent Scott's company, VES Drilling Solutions Inc., invoices [that] VES Drilling Solutions Inc. submitted to Antero, Antero safety guidelines from 2013 to 2016, drilling reports, drilling prognos[e]s, and West Virginia oil and gas regulations. [He] also interviewed

3

>several members of Antero's management team and several
>Antero drilling consultants, and completed an observational
>visit to an Antero site.

(*Id.* at 2.)  At his deposition, however, Milstead testified that his claim about "interview[ing] several members of Antero's management team" was a "misstatement," and that he only interviewed one manager. (ECF No. 116-2 at 19.)[3]  He also stated that the "several" in "several Antero drilling consultants" meant "two," whom he interviewed for about ninety minutes in the aggregate. (*Id.* at 46.)  The site visit was to a drilling operation suggested by the manager as being more easily accessible than other potential sites. (*Id.* at 45–46.)

## II.  LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

>A witness who is qualified as an expert by knowledge, skill,
>experience, training, or education may testify in the form of
>an opinion or otherwise if: (a) the expert's scientific,
>technical, or other specialized knowledge will help the trier of
>fact to understand the evidence or to determine a fact in
>issue; (b) the testimony is based on sufficient facts or data;
>(c) the testimony is the product of reliable principles and
>methods; and (d) the expert has reliably applied the
>principles and methods to the facts of the case.

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise

---

[3] Scott argues that this "manager" was not a really a manager (*see* ECF No. 116 at 7 n.4), but the Court need not address that contention in this context.

4

admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advance[] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011).

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

### III. ANALYSIS

Scott challenges Milstead's opinions on numerous fronts, as exemplified by the following:

- Antero supposedly designated Milstead "to testify about the economic realities of the drilling consultants' work with Antero" (ECF No. 116 at 2), but Milstead is unqualified to provide expert opinions on this topic because he "openly admits he has absolutely no experience with the FLSA or the economic realities test" (*id.* at 4) and "fundamentally does not understand" that "Antero engaged [him] to test the economic realities factors" (*id.* at 5).

- Instead of researching FLSA standards, "Milstead utilized his own subjective, manufactured, and undocumented 'standards' to conduct his

5

> investigation, none of which can be replicated, tested, or verified to ensure he applied them correctly or at all." (*Id.* at 5–6, 8.)

- "Milstead performed his investigation without using any accepted methodology, plan, standards, criteria, or other guiding principles." (*Id.* at 7, 8–10, 11.)

- "Milstead's 'methodology,' 'conclusions,' and even his ultimate report, were spoon-fed to him by Kopp [one of Antero's former attorneys on this case]." (*Id.* at 7, 9.)

- Milstead did not seek "data from other sources," and therefore "failed to confirm [that] what Antero told him aligned with reality." (*Id.* at 10–11.)

However, having read Milstead's report and the excerpts from his deposition that Scott cites, it is clear that these challenges all rest on argumentative re-characterization of Milstead's opinions, methods, and role. Some of it is frankly wishful *mis*characterization of the record, such as arguing that Attorney Kopp "spoon-fed" Milstead's report to him. The deposition testimony supposedly supporting this rather serious claim is as follows:

> Q. Okay. Did you do anything—well, let me ask this: So I can see on the—on your time entry that it looks like on November 9th, you started drafting and organizing.
>
> Do you see that?
>
> A. Yes.
>
> Q. And is that in reference to drafting and organizing your—your report?
>
> A. Basically it was an outline that Kopp and I had—had put together. And I believe those are in the notes— handwritten notes there, one of the things that he wanted me to do, okay—
>
> Q. Uh-huh.

6

>        A.  —in helping me form an expert witness reports there, okay?  All right?
>
>        Q.  Yeah.
>
>        A.  Just an outline.
>
>        Q.  Sure.  Before that outline was generated, did you have specific questions that you knew you needed to answer as part of your expert work?
>
>        A.  Those are in the handwritten notes that I submitted.
>
>        Q.  And those specific questions would have been created by you or Mr. Kopp?
>
>        A.  Primarily me and Mr. Kopp.

(ECF No. 116-2 at 34.)  Far from demonstrating "spoon-feeding," this testimony—which is vague to begin with—appears to show typical interactions between an attorney and an expert as they confer on the scope of the subjects about which the attorney has retained the expert to render an opinion.[4]  Nothing here justifies the accusation that the attorney effectively wrote the expert's report.

Scott's other challenges are not based on mischaracterizations as disingenuous as "spoon-feeding" (although some come close).  Nonetheless, those challenges suffer from similar problems.  To begin, Antero did not retain Milstead to be an expert on the economic reality (or "realities") test, nor to apply his expertise to the economic reality factors.  Rather, when one reduces the various questions asked and answers given in Milstead's opinion to their basic substance, it appears that Antero retained Milstead to offer his expertise on the following:

---

[4] If the phrase "specific questions" refers to the questions quoted in Part I, above, the Court sees nothing abnormal.  In previous cases, the Court has seen perfectly adequate expert reports that are framed as responses to questions posed in a letter from the attorney to the expert.  Milstead's report is materially no different.

- In the industry generally, what is a "drilling consultant"?
- Does Antero treat those it hires as "drilling consultants" in the manner one would normally expect a drilling consultant to be treated in the industry?
- On paper, is the role Scott played when working for Antero consistent with the role of a drilling consultant, as Milstead understands it?

All of this is conceivably relevant and helpful to a factfinder applying the economic reality test. *See* Part I, above.

Scott may argue, of course, that his treatment as a drilling consultant differed in important respects from Milstead's understanding of how Antero treats drilling consultants—or in other words, that Milstead's opinions have no relevance in *this* case because they are based on a conception of the facts that will not be presented to the jury, or that a reasonable jury could not accept. But Scott does not argue that here. He argues only that Milstead's failure to interview Scott or additional drilling consultants (beyond the two he actually interviewed) is a failure of "methodology"—more specifically, that he "failed to confirm what Antero told him aligned with reality." (ECF No. 116 at 10–11.)

Scott's methodology argument—here and elsewhere—is misdirected. "Methodology" is a term the Supreme Court used in *Daubert* specifically with reference to *scientific* methodology. *See* 509 U.S. at 592–93. In this vein, Scott attacks Milstead for "utiliz[ing] his own subjective, manufactured, and undocumented 'standards' to conduct his investigation, none of which can be replicated, tested, or verified to ensure he applied them correctly or at all." (ECF No. 116 at 5–6.) But Antero did not retain Milstead to offer that kind of testimony. "[T]here are many different kinds of experts,

and many different kinds of expertise," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), and Antero retained Milstead for his "specialized knowledge" in the oil and gas industry, Fed. R. Evid. 702(a). "Methodology" is not an obviously relevant consideration here, at least as Scott understands it. *See Kumho Tire*, 526 U.S. at 150 ("*Daubert* makes clear that the factors it mentions [such as reliability of the methodology] do *not* constitute a definitive checklist or test. And *Daubert* adds that the gatekeeping inquiry must be tied to the facts of a particular case." (internal quotation marks and citations omitted; emphasis in original)).[5] Expert testimony can take the form of "specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case," *id.* at 149, and Milstead's opinions fall almost entirely in the first category. Scott notably does *not* argue either that Milstead has no specialized knowledge or that such knowledge is within a jury's normal competence.

Milstead's opinion has weaknesses, of course, including those pointed out above—*e.g.*, that his knowledge of Antero's practices appears to be based on a small "sample" of observations. But these weaknesses are not so fundamental as to render his opinion inadmissible under Rule 702, and are instead more appropriately understood as subjects for cross-examination at trial.

## IV. CONCLUSION

For the reasons set forth above, Scott's Motion to Exclude the Report and Testimony of Thomas H. Milstead (ECF No. 116) is DENIED.

---

[5] The Court does not mean to imply that there can never be a valid methodology challenge outside of a "scientific" context. Rather, the significance of methodology depends on the type of expert testimony in question, and Milstead's testimony is not of a type that lends itself to the sort of methodology inquiry the Scott demands.

Dated this 9th day of March, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge