IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0693-WJM-SKC

VINCENT SCOTT, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

ANTERO RESOURCES CORP.,

    Defendant.

**ORDER GRANTING DEFENDANT ANTERO RESOURCES CORPORATION'S SECOND AMENDED MOTION FOR SUMMARY JUDGMENT, AND DENYING AS MOOT PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR DECERTIFICATION**

Plaintiff Vincent Scott brings this action individually and on behalf of all others similarly situated (collectively, "Plaintiffs") against Defendant Antero Resources Corp. ("Antero") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (ECF No. 1.) Scott claims that he and others similarly situated were misclassified as independent contractors and therefore unlawfully denied overtime wages. (*Id.*)

Before the Court are Antero's Second Amended Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 205), Plaintiffs' Motion for Partial Summary Judgment ("Motion for Partial Summary Judgment") (ECF No. 206), and Antero's Motion for Decertification (ECF No. 138). For the reasons explained below, the Motion for Summary Judgment is granted, and the remaining motions are denied as moot.

# I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

**A.    Factual Allegations[1]**

Antero is a Colorado-based oil and natural gas company engaged in the exploration, development, and production of natural gas and oil properties in West Virginia and Ohio. (ECF No. 205 at 7.) Plaintiffs worked for Antero as drilling

---

[1] The following factual summary is based on the parties' briefs on the Motion for Summary Judgment, the Motion for Partial Summary Judgment, and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

consultants and were classified by Antero as independent contractors and, accordingly, were not paid overtime compensation.  (ECF No. 182 at 1.)

Antero paid Plaintiffs a day rate of at least $1,000 for a total of at least $200,000 per calendar year.  (ECF No. 205 at 19 ¶ 34.)  Further, Antero states that it paid Plaintiffs in regular intervals.  (ECF No. 205 at 19 ¶ 35.)  The Master Consulting Services Agreements, signed by Plaintiffs, provide that Plaintiffs were to be paid within 30 days of Antero's receipt of an invoice.  (ECF No. 181-1 at 2.)  One plaintiff, Virgil Gaither, testified that he was paid once a month and always received payment in a given month.  (ECF No. 180-5 at 9.)  According to Antero, it paid Plaintiffs a guaranteed amount of no less than $1,000 per day for each hitch.[2]  (ECF No. 205 at 22 ¶ 36.)  In addition, Antero states that Plaintiffs typically worked at indoor desks, and did not perform manual labor.  (ECF No. 205 at 22 ¶ 37; ECF No. 180-5 at 7.)

Plaintiffs agree that Antero paid them a day rate of at least $1,000 per day for each hitch.[3]  (ECF No. 207 at 9 ¶ 34.)  While Plaintiffs contest that Antero paid them in regular intervals, they provide no evidence to support their contention.[4]  (ECF No. 207

---

[2] Plaintiffs decided whether to provide services to Antero on a hitch by hitch basis.  (ECF No. 209 at 15.)  Each hitch was two weeks in length.

[3] As Antero points out in its Response to Movant's Material Facts, Plaintiffs' Statement of Material Facts in its Motion for Partial Summary Judgment contains numerous improper legal conclusions that Antero could not admit or deny.  (*See, e.g.*, ECF No. 210 at 9 ¶ 3, at 10 ¶¶ 5–6, at 11 ¶¶ 9–10.)

[4] Plaintiffs instead state that Antero did not pay them a salary but instead paid them a day rate.  (ECF No. 207 at 15 ¶ 6.)  Plaintiffs state that they billed Antero for each day worked and could not bill for—and were not paid for—days they did not work.  (*Id.*)  These statements, however, do not refute the fact that Plaintiffs were compensated in regular intervals, with Gaither testifying he was paid once a month.  (ECF No. 205 at 22 ¶ 35.)  Plaintiffs' statement is more properly characterized as a legal argument, as opposed to a statement of fact.  Antero does not contest that it paid Plaintiffs a day rate or that Plaintiffs were not paid for days they did not work.

at 10 ¶ 35.)  Instead, Plaintiffs reiterate the fact that Antero paid Plaintiffs a day rate for each day worked, and dispute the notion that Antero paid them any guaranteed weekly compensation or paid them using any predetermined or fixed "regular intervals."  (*Id.*)  Further, Plaintiffs state that Antero did not pay them any compensation if they did not work during a week.  (ECF No. 206 at 7 ¶ 8.)  Plaintiffs contest Antero's statement that they typically worked at desks and performed no manual labor, but only to the extent that they state "Drilling Consultants worked on location at the rig site, including on the rig floor or cement truck, in addition to monitoring drilling in a trailer known as the 'shack' or 'bump out office.'"  (ECF No. 207 at 10 ¶ 37.)

**B.     Procedural History**

On March 17, 2017, Plaintiffs filed the Collective Action Complaint ("Complaint").  (ECF No. 1.)  They allege that Antero knowingly, willfully, or in reckless disregard of their rights, violated Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.  (*Id.* ¶¶ 53–54.)  Plaintiffs filed the Complaint on behalf of a putative class of similarly situated employees consisting of:

> Current and former Drilling Consultants employed by, or working on behalf of, Antero Resources Corp. during the past three years who were classified as independent contractors and paid a day-rate.

(*Id.* ¶ 8.)

On May 10, 2017, Antero filed its Answer.  (ECF No. 18.)  On February 26, 2018, the Court granted Plaintiffs' Motion for Conditional Certification, conditionally certifying

4

this action as a collective action under 29 U.S.C. § 216(b), with the eligible collective action members defined as "all current and former Drilling Consultants who worked for Antero Resources Corp., who were classified as independent contractors and paid a day-rate, at any time from **February 26, 2015** to present."  (ECF No. 39 (emphasis in original).)

On March 30, 2020, Antero filed its Motion for Decertification, which is fully briefed.  (ECF Nos. 138, 158, and 163.)  Antero argues the Court should decertify the collective and dismiss the claims of the opt-in Plaintiffs because the claims at issue are wholly individualized.

On May 7, 2021, Antero filed its Motion for Summary Judgment, which is fully briefed.[5]  (ECF Nos. 205, 207, and 209.)  Antero argues that summary judgment in its favor is warranted because Plaintiffs were correctly classified as independent contractors, or alternatively, because even if Plaintiffs are found to be employees, they are exempt from overtime under FLSA's highly compensated employee or administrative employee exemptions.  Additionally, Antero argues it acted in good faith and did not willfully misclassify Plaintiffs or recklessly disregard the law.

On May 7, 2021, Plaintiffs filed their Motion for Partial Summary Judgment, which is fully briefed.  (ECF Nos. 206, 208, and 210.)  Plaintiffs request partial summary judgment on three of Antero's affirmative defenses, including the exemption defenses, good faith defense, and estoppel defense.

Thus, all motions are ripe for review.

---

[5] The Court has directed the parties to amend their original motions for summary judgment and partial summary judgment for various non-substantive reasons.  (ECF Nos. 179, 204.)  For expediency, the Court solely refers to the most recent versions of these motions in this Order.

5

### III. FLSA REGULATIONS

Antero argues that even if Plaintiffs are employees, they "fall squarely" within the FLSA's highly compensated and administrative exemptions to overtime pay.[6] (ECF No. 210 at 23.)

Under the FLSA "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)" are exempt from the FLSA's overtime pay requirements. 29 U.S.C. § 213(a)(1). Some highly-compensated employees are also exempt from the FLSA requirements. 29 C.F.R § 541.601.

An employee is considered a "highly compensated," and thus exempt from overtime, if the individual earns more than $100,000 in total compensation per year and performs administrative duties, as opposed to manual labor; he is not entitled to overtime under this exemption as long as he performs at least one or more duties typical of an exempt employee and is paid at least $455 per week on a "salary basis." *See* 29 C.F.R. § 541.601. "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id.* § 541.601(c).

Under the FLSA's "administrative" exemption in effect during the relevant time period, an employee's primary duty must involve work directly related to general business operations or management and customarily and regularly involve the use of

---

[6] The U.S. Department of Labor raised the thresholds for the highly compensated employee exemption and the administrative exemption, and those changes went into effect on January 1, 2020. However, like the parties, the Court relies on the original regulations promulgated in 2004 that were in effect during all relevant periods of time when Plaintiffs worked for Antero. (*See* ECF No. 205 at 35 n.5.)

6

discretion and independent judgment with respect to matters of significance, and the employee must be paid at least $455 per week on a "salary basis." *See* 29 C.F.R. § 541.200.

The FLSA defines "salary basis" as follows:

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
>
> . . .
>
> [A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

29 C.F.R. § 541.602(a).

Finally, under the "reasonable relationship"[7] requirement,

> an exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604(b).

## IV. ANALYSIS

The Tenth Circuit has observed that "Congress enacted the FLSA in order to

---

[7] As the Court will discuss below, the parties dispute whether the reasonable relationship requirement applies in this case.

7

protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015) (internal quotation marks omitted) (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)); *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011) ("The purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'" (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948))). "The FLSA effectuates this purpose by 'generally requir[ing] an employer to pay its employees at a rate of one and one-half times their regular rate of pay for any time worked in excess of forty hours in a given workweek.'" *Id.* (quoting *Archuleta v. Wal–Mart Stores, Inc.*, 543 F.3d 1226, 1228 (10th Cir. 2008). Thus, "the statute provides for overtime pay in specified circumstances." *Id.* (citing 29 U.S.C. § 207(a)(2)).

A plaintiff alleging a violation of the overtime requirement bears the burden of proving by a preponderance of the evidence that: (1) he was in an employment relationship with the defendant, (2) he was engaged in activities within the coverage of the FLSA, (3) he worked over forty hours within a workweek without overtime compensation, and (4) he is owed a definite amount of compensation. 29 U.S.C. § 207(a)(1). Accordingly, if an employee satisfies his burden of proving that his employer is violating the FLSA, he may be entitled to recover unpaid overtime compensation and

8

liquidated damages. *See Ellis*, 779 F.3d at 1187 (citing 29 U.S.C. § 216(b)). However, there are exemptions to the overtime requirement, and relevant to this case are the exemptions for employees who are highly compensated or employed in an administrative capacity. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.200, 541.601. The burden of proving an exemption is on the employer. *See Hagadorn v. M.F. Smith & Assocs., Inc.*, 1999 WL 68403, at *2 (10th Cir. 1999). The Supreme Court has stated that "Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give them anything other than a fair (rather than a 'narrow') interpretation.'" *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (citation omitted).

As an initial matter, the Court notes that neither party cites any binding Tenth Circuit authority to guide the Court in its analysis of the core issue in this case: whether a sufficiently large day rate paid to Plaintiffs can satisfy the salary basis requirement under the FLSA. Instead, both parties rely primarily on authority from the Fifth Circuit, and to a lesser degree, cases from other circuits and district courts (the vast majority of which are outside the Tenth Circuit). Thus, the Court engages with the non-binding authority discussed and analyzed by the parties.

**A.   FLSA Overtime Exemptions Apply to Plaintiffs**

The Court assumes *arguendo* that Plaintiffs are Antero's employees, as opposed to independent contractors.[8] Thus, the remaining question is whether Plaintiffs fall

---

[8] Although for the purposes of this Order the Court assumes Plaintiffs are Antero's employees, the Court notes that Antero presents strong evidence that Plaintiffs were correctly classified as independent contractors. Further, the Court notes that in responding to Antero's Motion for Summary Judgment, Plaintiffs completely ignored a highly persuasive Fifth Circuit opinion which concerns very similar facts and circumstances as this case, *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369 (5th Cir. 2019). However, because the Court decides

9

within the FLSA's highly compensated or administrative exemptions for overtime pay. For the following reasons, the Court concludes they do.[9]

As an initial matter, the Court notes that in the argument section of their brief devoted to refuting Antero's exemptions defense, Plaintiffs do not contest that their salary level, duties, or independent judgment and discretion meet the exemptions.  (*See* ECF No. 207 at 43–48; ECF No. 209 at 17.)  Moreover, in an earlier Motion for Partial Summary Judgment, which the Court denied without prejudice (ECF No. 75), Plaintiffs stated, "At this stage, Plaintiffs do not contest the duties and salary-level elements of Antero's executive, administrative, professional, and highly compensated employee exemption defenses."  (ECF No. 58 at 14.)  Instead, as the Court discusses below, Plaintiffs focus their argument on whether Antero paid them on a salary basis and whether the reasonable relationship test applies and has been met.  Under these circumstances, the Court finds that Plaintiffs have conceded these points, and the Court need not discuss them further.[10]

In its Motion for Summary Judgment, Antero argues that even if the Court finds that Plaintiffs are its employees, they are nevertheless exempt from overtime under the FLSA's highly compensated and/or administrative exemptions.  (ECF No. 205 at 34.) Specifically, Antero emphasizes that Plaintiffs were typically paid $1,400 or more for any

---

this case on alternate grounds, it will not rule on whether Plaintiffs are properly classified as independent contractors.

[9] The parties do not distinguish their arguments between the highly compensated and administrative employee exemptions.  Thus, the Court discusses these issues primarily in the context of the highly compensated employee exemption.

[10] Nonetheless, the Court has considered whether Plaintiffs' salary, duties, and independent judgment and discretion meet the requirements of the exemptions, and based on the evidence Antero cites (ECF No. 205 at 27) and the lack of an argument in opposition from Plaintiffs, it concludes they do.

day in which they worked, and at the very least $1,000 per day.  (*Id.* at 37.)  As such, according to Antero, "Plaintiffs were guaranteed at least $1,000 in any week in which they performed any work in any single day."  (*Id.* (citing Antero's Statement of Facts ¶ 34).)  Plaintiffs do not dispute that they were paid in excess of $100,000 per year; for instance, in 2014, most Plaintiffs earned between $250,000 and $350,000.  (*Id.*)  Antero highlights that typically, Plaintiffs earned $250,000–$450,000 per year for approximately 26 weeks of work.  (ECF No. 209 at 17.)

Moreover, Plaintiffs testified that if they started a two-week hitch, they completed it, "effectively guaranteeing their pay for any two-week period in which they performed any work."  (ECF No. 205 at 34 (citing Antero's Statement of Facts ¶ 36).)  Finally, Plaintiffs were paid once per month in regular intervals.  (*Id.* (citing Antero's Statement of Facts ¶ 35).)  Based on the foregoing, because Plaintiffs were guaranteed at least one day's rate—a predetermined amount of more than $1,000—in any week in which he performed any work, and because that day rate far exceeds the FLSA's statutory minimum, Antero contends that Plaintiffs meet the salary basis test as a matter of law.  (*Id.* at 38.)

In response, and in their Motion for Partial Summary Judgment, Plaintiffs argue the opposite, namely, that a day rate (no matter how high in number) can never meet the salary basis requirement because a "weekly, not daily guarantee is required."  (ECF No. 207 at 46 (citing *Hewitt v. Helix Energy Sols. Grp., Inc.*, 983 F.3d 789, 793–94 (5th Cir. 2020) (*Hewitt II*), *reh'g en banc granted, opinion vacated*, 989 F.3d 418 (5th Cir. 2021); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2003-5, 2003 WL 23374601, at *4–5 (July 9, 2003) ("Payment on an hourly [or daily] basis without an

11

operative salary guarantee does not qualify as a 'salary basis' . . . within the meaning of the regulations.")).) According to Plaintiffs, a day rate, by definition, compensates a worker based on the number of days worked and constitutes a daily—as opposed to weekly—guarantee. (*Id.*) Because Antero only paid Plaintiffs for the days that they worked, Plaintiffs argue that Antero cannot show that the employment arrangement guarantees a weekly minimum salary, regardless of the number of days worked. (*Id.* at 47.) According to Plaintiffs, they received a predetermined amount on a daily basis, not on a weekly, or less frequent basis. (*Id.*)

For support, Plaintiffs heavily rely on *Hewitt II*, in which the Fifth Circuit found that a day rate is the "very opposite" of an amount that is paid regardless of the number of days worked. *Hewitt II*, 983 F.3d at 794. Under the majority opinion, in order for an employee to qualify as "salaried," a weekly, not daily, guarantee is required. *See id.* at 793–94. *Hewitt II* also concluded that the reasonable relationship test applies in the context of the highly compensated employee exemption, which the Court will discuss below, *see infra* Part IV.B. However, *Hewitt II* contains a forceful dissenting opinion, advocating Antero's position here, namely, that a comparably highly compensated employee in the oil industry is exempt from overtime, and that the reasonable relationship requirement does not apply in the context of a highly compensated exemption. *See Hewitt II*, 983 F.3d at 802–09.

Importantly, the Court notes that on March 9, 2021, the Fifth Circuit granted the petition for rehearing en banc in *Hewitt II*.[11] *See Hewitt v. Helix Energy Sols. Grp., Inc.*,

---

[11] In their response to the Motion for Summary Judgment, Plaintiffs accuse Antero of relying on arguments from the withdrawn Fifth Circuit decision in *Faludi v. U.S. Shale Sols., L.L.C.*, 936 F.3d 215 (5th Cir. 2019). (ECF No. 207 at 44.) This statement is incorrect. Antero does not rely on this opinion *because* it was withdrawn. (ECF No. 209 at 18.) However, the

989 F.3d 418 (5th Cir. 2021). Thus, the primary authority on which Plaintiffs rely has been vacated.

In any event, the Court finds the reasoning of the majority opinion in *Hewitt II* unconvincing, and instead finds the decisions of other courts, particularly the district court opinion in *Faludi v. U.S. Shale Sols. LLC*, 2017 WL 5969261, at *10 (S.D. Tex. Nov. 30, 2017), *aff'd in part, vacated in part, remanded sub nom. Faludi v. U.S. Shale Sols., L.L.C.*, 936 F.3d 215 (5th Cir. 2019), *as revised* (Aug. 22, 2019), *opinion withdrawn and superseded*, 950 F.3d 269 (5th Cir. 2020), and *aff'd in part, vacated in part*, *remanded sub nom. Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269 (5th Cir. 2020), and the subsequent Fifth Circuit opinions issued in the case, are correctly decided. Although the Court is keenly aware that the Fifth Circuit's opinion in *Faludi*, which discussed with approval the district court's determination that the highly compensated employee was exempt from overtime, was subsequently withdrawn, the Court nonetheless finds its analysis highly persuasive and applicable to the facts of this case.[12]

For the following reasons, the Court finds that the salary basis requirement is met in this case. As in *Faludi*, Plaintiffs contend that the guaranteed day rate of at least $1,000 does not satisfy the salary basis requirement because it is not calculated on a weekly or less frequent basis. *See Faludi*, 936 F.3d at 219. The Court disagrees,

---

Court views this opinion as having significant persuasive value and will discuss and treat it accordingly.

[12] The Court's position on this matter is reinforced by the fact that in its final opinion in *Faludi*, the Fifth Circuit stated that "we think U.S. Shale's arguments are well-taken as to why Faludi fits within the highly compensated employee exemption to the FLSA," even though the Fifth Circuit determined it "need not reach that issue given that Faludi is an independent contractor not covered by the FLSA's requirements." *Faludi*, 950 F.3d at 275.

13

finding that the text of the regulation favors Antero. Plaintiffs were compensated on a salary basis because their day rate guaranteed them $1,000 for every day that they worked and thus, *perforce,* they would receive more than the minimum of $455 per week for any week in which they performed *any* work. See *Faludi*, 2017 WL 5969261, at *9. If Plaintiffs worked for even one hour in a given week, they were guaranteed $1,000, which far exceeds the regulatory minimum of $455 per week. Moreover, as the Fifth Circuit explained in *Faludi*, the text of the regulation only provides that Plaintiffs must have "regularly *received* each pay period on a weekly, or less frequent basis, a predetermined amount." *Faludi*, 936 F.3d at 220 (alterations omitted, emphasis in original). The evidence demonstrates that Plaintiffs received their compensation monthly, which by definition is a less frequent than weekly basis. Thus, Plaintiffs regularly received a predetermined amount of compensation on a less frequent than weekly basis in accordance with 29 C.F.R. § 541.602(a). *Id.* at 220.

Although *Hewitt II* has been vacated, to be reheard en banc, the dissenting opinion authored by the Honorable Jacques L. Wiener, Jr., merits attention. Similar to Plaintiffs here, the plaintiff in *Hewitt II* made $963 per day for every day that he worked, regardless of the number of hours per day he worked, and his salary totaled more than $200,000 per year. See *Hewitt II*, 983 F.3d at 802 (dissenting, J. Wiener). According to Judge Wiener, "[c]ommon sense dictates that [the plaintiff] was a 'highly compensated employee,' and a very high one indeed." *Id.* at 803. The dissent observed that Hewitt's bi-weekly pay clearly and indisputably satisfied the salary basis test, as he received a paycheck every two weeks (a less frequent basis), and his $963 day rate was "predetermined" because before performing any work, he knew the amount he would be

14

paid for each day, regardless of how few or how many hours he worked.  *Id.* at 805.  In addition, the dissent noted that Hewitt could have significant variations in the quantity of days and hours he worked, but his guaranteed daily minimum would not vary.  *Id.*

Importantly, the dissent explains how in its view Hewitt could be exempt in light of the requirement of the salary basis test that "an exempt employee must receive the full salary for any week *in which the employee performs any work* without regard to the number of days or hours worked."  *Id.* (emphasis in original).  Plaintiffs here make the same argument.  (ECF No. 206 at 25.)  Although the majority concluded that Hewitt was paid *with* regard to the number of days worked, to the dissent—and to this Court—such a conclusion constitutes a "flawed reading of the regulation."  *Id.*  Like Plaintiffs here, "[i]f Hewitt performed any work—even for just one hour—he was paid his fully daily rate."  *Id.*  Accordingly, Hewitt was paid at least $963 for each day and every week he worked—even if he worked only one hour—without regard to the number of days or hours worked.  *Id.*  As such, the dissent found Hewitt "clearly met the requirements of 29 C.F.R. § 541.602(a)."  *Id.*  Thus, Judge Wiener concluded that common sense dictates that such a highly compensated employee as Hewitt was *not* entitled to overtime.  *Id.* at 803.

It is true that other courts have taken the opposite position.  *See Goodly v. Check-6, Inc.*, 2018 WL 5091901, at *7 (N.D. Okla. Oct. 18, 2018) (noting that courts have taken differing views on the legal merits of whether a sufficiently large day rate can satisfy the salary basis requirement but finding it need not reach the merits of the issue); *McQueen v. Chevron Corp.*, 2018 WL 1989937, at *1 (N.D. Cal. Apr. 3, 2018) (rejecting argument that day rate exceeding $1,000 satisfied salary-basis requirement),

*reconsideration denied*, 2018 WL 2552248, at *1 (May 9, 2018); *Snead v. EOG Res., Inc.*, 2018 WL 1151138, at *2–3 (W.D. Tex. Feb. 13, 2018) (granting employees' summary judgment on exemption defenses because the employer's day-rate compensation plan did not satisfy the salary basis test); *Keen v. DXP Enters., Inc.*, 2016 WL 3253895, at *5 (W.D. Tex. June 6, 2016) (granting summary judgment on exemption defenses because a day-rate "is not pay on a salary basis as is required").

However, the Court nonetheless finds the reasoning of the dissent in *Hewitt II* persuasive, not only on analytical grounds, but also on a policy level. If the Court reached the opposite conclusion, employers would have to pay highly skilled, highly compensated individuals like Plaintiffs substantially high overtime wages. *See Hewitt II*, 983 F.3d at 808–09. As Antero asserts, such an outcome would be inconsistent with Congress's "intent . . . to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Under these circumstances, therefore, the Court finds that Antero has met the salary basis test.

**B.     Reasonable Relationship Test Does Not Apply Here**

Plaintiffs argue that Antero cannot show its day-rate plan satisfies the reasonable relationship requirement, which mandates that the salary guarantee must bear a reasonable relationship between the guaranteed amount and the amount actually earned. (ECF No. 207 at 47.) However, the Court agrees with Antero (ECF No. 209 at 20–21) and numerous other courts that the reasonable relationship requirement does not apply in the context of the highly compensated employee exemption.

As Antero underscores, the majority in *Faludi*, the dissent in *Hewitt II*, and the

First and Second Circuits have all rejected the applicability of the reasonable relationship test to highly compensated employees. *See Faludi*, 936 F.3d at 220 (finding that 29 C.F.R. § 541.604(b) does not apply to employees who meet the requirements of the highly compensated employee exemption set out in 29 C.F.R. §§ 541.600, 541.601, and 541.602); *see also Hewitt II*, 983 F.3d at 803 ("§ 541.601 is devoid of any reference to § 541.604(b); it states only that the total annual compensation must include at least $684 per week paid on a salary . . . basis as set forth in § 541.602") (alterations and quotation marks omitted); *Litz v. St. Consulting Grp., Inc.*, 772 F.3d 1, 5 (1st Cir. 2014) (same); *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 149 (2d Cir. 2013) (same). Because the Court has found that Plaintiffs meet these requirements—specifically, because their $1,000 day rate guarantees them at least $455 per week and they regularly received that predetermined amount on a weekly or less frequent basis—they are exempt from the FLSA's overtime requirements as highly compensated employees, and the Court need not apply the reasonable relationship test.

Therefore, because the Court finds that Plaintiffs fall within the highly compensated employee exemption of the FLSA, they are not entitled to overtime compensation, and the Court will grant summary judgment in favor of Antero.[13]

### V. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Defendant Antero Resources Corporation's Second Amended Motion for

---

[13] Because the Court's analysis of whether Plaintiffs fall under the FLSA's exemptions is case-dispositive, the Court will not address the other arguments raised in Antero's Motion for Summary Judgment or Plaintiffs' Motion for Partial Summary Judgment.

Summary Judgment (ECF No. 205) is GRANTED;

2. Plaintiffs' Amended Motion for Partial Summary Judgment is (ECF No. 206) is DENIED as moot;

3. Defendant's Motion for Decertification (ECF No. 138) is DENIED as moot;

4. Judgment shall enter in favor of Defendant and against Plaintiffs;

5. Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1; and

6. The Clerk shall terminate this action.

Dated this 20th day of May, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge